**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:26CR285 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE DAVID A. RUIZ |
| -vs- | : | |
| | : | |
| JUSTIN SWAYSLAND, | : | **MOTION TO DISMISS** |
| | : | **COUNT 2 OF THE INDICTMENT** |
| Defendant. | : | |
| | : | |

Justin Swaysland moves this Court to dismiss Count 2 of the indictment, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), based on the facial and applied unconstitutionality of 18 U.S.C. § 922(g)(1). A memorandum in support is attached and incorporated hereto.

Respectfully submitted,
STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Matthew Gay*
MATTHEW GAY
New York Bar:  5237409
Assistant Federal Public Defender
*/s/ Michael V. Heffernan*
MICHAEL V. HEFFERNAN
Assistant Federal Public Defender
Ohio Bar: 0074776
1660 West Second St., Suite 750
Cleveland, OH 44113
(216) 522-4856 Fax: (216) 522-4321
E-mail: matthew_gay@fd.org
E-mail: Michael_heffernan@fd.org

1

**MEMORANDUM**

## I.  Introduction

Justin Swaysland believes that a local violent gang has put a hit out on him. His right to defend himself in public against this kind of violent threat is at the heart of the Second Amendment's protections. *See Wolford v. Lopez*, 225 L.Ed. 2d 494, 500 ("an individual's right to keep and bear arms, [is] with[in] the Amendment's 'central' concern being the fundamental rights of self-defense") (citing *District of Columbia v. Heller*, 554 U.S. 570, 577 (2008)). The nationwide, permanent disarming under 18 U.S.C. § 922(g) is a textbook example of a general criminal statute that can only be supported by general police powers that Congress does not have under Article I of the Constitution.

The Second Amendment protects the right of individuals to bear firearms for self-defense. *Heller*, 554 U.S. at 592. To ensure that the original meaning and scope of this important right are not diluted by modern-day gun laws, the Supreme Court held that when a statute burdens conduct that is protected by the Second Amendment's "plain text," the statute is unconstitutional unless the Government proves that it "is consistent with this Nation's historical tradition of firearms regulation." *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). Applying this framework, § 922(g)(1) runs counter to the Second Amendment's plain text. Mr. Swaysland's possession of a firearm is protected by the Second Amendment's text, and § 922(g)(1) is inconsistent with the principles underpinning the Nation's regulatory tradition.

First, Section 922(g) is unconstitutional because it is an invalid exercise of Congress's Commerce Clause authority. Section 922(g)(1) is unconstitutional as applied to Mr. Swaysland. Therefore, Count 2 of the indictment should be dismissed.

2

**II.  18 U.S.C. § 922(g) is unconstitutional as it exceeds Congress's authority under the Commerce Clause.[1]**

Congress's power is limited by the United States Constitution. *See Marbury v. Madison*, 5 U.S. 137, 176 (1803) ("The powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the constitution is written."). Although the Commerce Clause gives Congress the power to regulate the buying and selling of goods and services that are transported over state lines, it does not broadly authorize Congress to "regulate or ban any possession of any item that has ever been offered for sale or crossed state lines." *Hemani*, 146 S. Ct. at 1694 (Thomas, J., concurring) (quoting *Alderman v. United States*, 562 U.S. 1163, 1167 (2011) (Thomas, J., dissenting from denial of certiorari)). "Such an understanding would 'convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States.'" *Id.* (quoting *United States v. Lopez*, 514 U.S. 549, 567 (1995)).

To be a valid exercise of Congress's authority under the Commerce Clause, § 922(g) must fall within one of three categories. "It must either regulate 'the use of the channels of interstate commerce,' 'regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce,' or regulate 'activities that substantially affect interstate commerce.'" *Id*. at 1695 (quoting *Lopez*, 514 U.S. at 558-559). The felon in possession statute does not fall within

---

[1] Mr. Swaysland acknowledges that this argument is foreclosed by existing Sixth Circuit case law in the felon in possession context. However, given Justice Thomas's concurrence explaining why the current Sixth Circuit law is incorrect, Mr. Swaysland raises this issue now to preserve the issue for further review before the Sixth Circuit. (*United States v. Hemani,* 146 S. Ct. 1677 (2026) (Thomas concurring) ("I write separately to call attention to another issue: As a matter of both original meaning and this Court's precedents, 922(g)(3) appears to exceed Congress's enumerated power to regulate interstate commerce.")) Justice Thomas's dissent points specifically to binding Sixth Circuit precedent as being "misapprehended." *Hemani*, 146 S. Ct. at 1697 (citing *United States v. Chesney*, 86 F.3d 564, 575-75 (6th Cir. 1996)).

any of these three categories and is therefore beyond the powers of Congress and unconstitutional. *Hemani*, at 1694-1696 (Thomas, J., concurring).

Criminalizing the possession of firearms by people with prior convictions does not regulate "the use of the channels of interstate commerce" and it is not "an attempt to prohibit the interstate transportation of a commodity through the channels of interstate commerce." *See United States v. Chesney*, 86 F.3d 564, 577 (6th Cir. 1996) (Batchelder, J., concurring). *See also Hemani*, 146 S. Ct. at 1695 (Thomas, J., concurring). Section 922(g)(1) also does not seek to protect an instrumentality of, or a thing in, interstate commerce." *Id*. Thus, to be "a valid exercise of Congress's commerce power, it must be under Congress's third category of Commerce Clause authority." *Chesney*, 86 F.3d at 577; *Hemani*, 146 S. Ct. at 1695. But it fails there, too.

Section "922(g)(1) is a criminal statute that has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Chesney*, 86 F.3d at 578. "The mere possession of a firearm that long ago crossed state lines is not 'economic activity' in any sense, and the Court has never upheld regulation of intrastate activity that is not 'economic in nature' under this category." *Hemani*, 146 S. Ct. at 1695. The possession of a firearm by a felon is "simply not itself a commercial activity." *Chesney*, 86 F.3d at 578. While the Commerce Clause gives Congress the power to regulate the buying and selling of goods and services that are transported over state lines, its power to regulate commerce, "can by no means encompass authority over mere gun possession, any more than it empowers the Federal Government to regulate marriage, littering, or cruelty to animals, throughout the 50 States." *Hemani*, 146 S. Ct. at 1695 (quoting *Gonzales v. Raich*, 545 U.S. 1, 58 (2005) (Thomas, J., dissenting)). Even if assuming the statute touches *some* economic activity, it is not an essential part of that economic regulation and therefore does not fall within the Commerce Clause. *Chesney*, 86 F.3d at 578.

4

The Sixth Circuit has erroneously held that § 922(g)(1)'s "jurisdictional hook" makes it constitutional. *Turner*, 77 F.3d at 889 ("Requiring the government in each case to prove that a felon has possessed a firearm 'in or affecting commerce' ensures that the firearm possession in question affects interstate commerce."). *See also Chesney*, 86 F.3d at 568 (same). But this, Justice Thomas explains, conflicts with Supreme Court precedent. *Hemani*, 146 S. Ct. at 1695. Moreover, "treating Congress's 'jurisdictional element' as dispositive, 'could very well remove any limit on the commerce power' and 'would trespass on traditional state police powers.'" *Id*. (quoting *Alderman*, 562 U.S. at 1167 (Thomas, J., opinion)). If the jurisdictional element was alone sufficient, the Supreme Court's decisions, requiring that Congress's Commerce Clause power fit within defined categories, would be rendered meaningless. *Hemani*, 146 S. Ct. at 1697 (citing *United States v. Morrison*, 529 U.S. 598, 608-609 (2000)).

The Sixth Circuit misapprehends *Scarborough v. United States*, 431 U.S. 563 (1977). In *Chesney*, the Sixth Circuit concludes that because the Supreme Court was silent as to the constitutionality of § 922, it must have found it to be constitutional. *Chesney*, 86 F.3d at 571. Yet, there is no basis in law for the court to "rely upon the Supreme Court's silence on the matter of constitutional significance as any indication, much less a 'clear' indication, that the Court has, in effect, already passed upon a constitutional question." *Id*. at 581 (Batchelder, J. concurring). Justice Thomas explains that the Supreme Court's decision in *Scarborough* "cannot be taken, by [the Supreme Court] or the court of appeals, as purporting to settle the question of § 922(g)'s constitutionality." *Hemani*, 146 S. Ct. at 1697. The Sixth Circuit erred in relying on *Lopez* and *Scarborough* to conclude § 922(g) is a valid exercise of Congressional power under the Commerce Clause. For the reasons explained by Justice Thomas, *Hemani*, 146 S. Ct. at 1694-98, and Judge

Batchelder, *Chesney*, 86 F.3d at 574-582, § 922(g) is unconstitutional as it exceeds Congress's authority.

**III.     18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Swaysland.**

Next, The Supreme Court clarified the analytical framework of Second Amendment challenges in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). The Court rejected the tiered scrutiny approach and instead held that to justify a firearm regulation, the government must demonstrate that the regulation "is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17.

"Under *Bruen*, we first ask whether 'the Second Amendment's plain text' covers [the defendant's] conduct." *United States v. Williams*, 113 F.4th 637, 648 (6th Cir. 2024) (quoting *Bruen*, 597 U.S. at 24). "If so, then the Constitution presumptively protects it." *Id.* It is the government's burden to show that the subsections of § 922(g) are constitutional. *Hemani*, 146 S. Ct. at 1686. This is because the Second Amendment covers the conduct of bearing a firearm for self-defense, so the Constitution "'presumptively' protects" that conduct. *Id.* at 1685.

**A.  It is the government's burden to show that Mr. Swaysland is presently dangerous.**

Following the Supreme Court's decisions in *Bruen* and *United States v. Rahimi*, 602 U.S. 680 (2024), the Sixth Circuit held that § 922(g)(1) was constitutional on its face and as applied to dangerous people, but when the government disarms people on a class-wide basis, "individuals must have a reasonable opportunity to prove that they don't fit the class wide generalization." *United States v. Williams*, 113 F.4th 637, 661 (6th Cir. 2024). *Williams* requires that a defendant bringing an as-applied Second Amendment challenge to § 922(g)(1) bears the burden of demonstrating that they are not dangerous. *Id.* at 658. This burden shift is wrong because *Williams* runs contrary to the holdings in *Bruen*, *Rahimi*, and *Hemani* by placing the burden on the defendant. *Compare Williams*, 113 F.4th at 662 (creating the burden to prove non-dangerousness

and imposing it on the defendant) *with Hemani*, 146 S. Ct. at 1685 (leaving the burden on the Government to justify the regulation) (quoting *Bruen*, 579 U.S. at 34) *and Rahimi*, 602 U.S. at 691 (same).

*Williams*'s foundation and outcome are unacceptably wrong. The Court created an additional burden that is not supported by *Bruen*, *Rahimi*, or *Hemani*, it should not control the outcome here. And the Court's reliance on "tainted artifact[s] [to] illuminate[] the original understanding of the right to keep and bear arms cannot be taken seriously." *Wolford v. Lopez*, 146 S. Ct. 2032, 2053 (2026).

The Sixth Circuit based 18 U.S.C. § 922(g)(1)'s constitutionality as applied to "dangerous" people based on unacceptably discriminatory laws. "Classifying people as dangerous simply because of their race or religion was wrong from the beginning and unconstitutional from 1868." *Williams*, 113 F.4th at 656. In *Wolford*, Hawaii attempted to justify disarming the public by creating a default rule that prohibited possessing a firearm on public property or private property held open to the public. *See* 146 S. Ct. 2032 (2026). One "statute Hawaii cite[d] was part of Louisiana's Black Code, and it provided a tool for disarming blacks and thus leaving them defenseless against attacks." *Id.* at 2053. The Supreme Court rejected Hawaii's claim, saying that this "tainted artifact . . . cannot be taken seriously." *Id.*

*Williams* relies on anti-Catholic, anti-Black, and anti-Native American disarmament statutes. *Williams*, 113 F.4th at 652 – 656. These tainted artifacts cannot be taken seriously. And the Sixth Circuit's reliance on Rhode Island and Massachusetts allowing British loyalists to keep their arms by showing special need is directly contrary to *Bruen*, which struck down New York's proper cause requirement for concealed handgun licensing.  *Bruen*, 597 U.S. at 71. The rotten

foundation cannot support the weight of eliminating the fundamental right to bear arms in self-defense, especially in light of the Supreme Court's clarification in *Wolford*. 146 S. Ct. at 2053.

### B.  The Sixth Circuit wrongly expands the scope of review.

The Sixth Circuit stated that:

> A person convicted of a crime is "dangerous," and can thus be disarmed, if he has committed (1) a crime "against the body of another human being," including (but not limited to) murder, rape, assault, and robbery, or (2) a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary.

*Williams*, 113 F.4th at 663. The first part is overbroad because "courts may evaluate a defendant's entire criminal record," sweeping in more crimes than would create liability under 18 U.S.C. § 922(g)(1). *Id.* The second part is unconstitutionally vague.

The "crimes against the person" category includes assaults. *Id.* But simple assault is most often a misdemeanor. *See, e.g.,* Ohio Rev. Code § 2903.13; Tenn. Code Ann. § 39-13-101; Mich. Comp. Laws Ann. § 750.81. Under *Williams*, the Government could disarm people based on misdemeanor simple assault convictions where the only predicate felony "involves crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements." *Williams*, 113 F.4th at 663. These misdemeanor assault convictions would not, by themselves, create liability under 18 U.S.C. § 922(g)(1). But *Williams* says these misdemeanors are enough to eliminate the constitutional right to bear arms in self-defense.

The Government violates a defendant's due process rights "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). The Supreme Court struck down the Armed Career Criminal act's "residual clause" as unconstitutionally vague. *Id*. at 597. The clause increased punishment for defendants whose criminal history "involves conduct that presents a serious potential risk of

8

physical injury to another." 18 U.S.C. § 924(e)(2)(B). *Williams*'s second category of disarm-able prior convictions are those "that inherently poses a significant threat of danger." *Williams*, 113 F.4th at 663. "By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Johnson*, 576 U.S. at 598. The same indeterminacy, unpredictability, and arbitrariness plague the second *Williams* category. It is therefore too vague to eliminate Mr. Swaysland's constitutional right.

## IV.     Conclusion

This Court should dismiss Count 2 of the indictment because it is unconstitutional. It is unconstitutional facially because it lacks foundation in Congress's Commerce Clause powers. It is unconstitutional as applied to Mr. Swaysland because the standard to disarm him is unconstitutionally vague and overbroad. The current standard also impermissibly creates a burden on Mr. Swaysland that is contrary to the controlling law from the Supreme Court. Therefore, Mr. Swaysland respectfully asks this Court to dismiss Count 2.

<div style="margin-left: 45%;">

Respectfully submitted,
STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Matthew Gay*
MATTHEW GAY
New York Bar: 5237409
Assistant Federal Public Defender
*/s/ Michael V. Heffernan*
MICHAEL V. HEFFERNAN
Assistant Federal Public Defender
Ohio Bar: 0074776
1660 West Second St., Suite 750
Cleveland, OH 44113
(216) 522-4856  Fax: (216) 522-4321

</div>

E-mail: matthew_gay@fd.org
E-mail: Michael_heffernan@fd.org